Filed 1/8/15  P. v. Stevenson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE | E058383 |
| Plaintiff and Respondent, | (Super.Ct.No. PEF004508) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| MARCUS WAYNE STEVENSON, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT

The petition for rehearing filed on December 29, 2014, is denied.  On the court's own motion, the opinion filed in this matter on December 11, 2014, is modified as follows:

On page 10, add a new footnote at the end of the first full paragraph, which begins, "[D]angerousness is not a factor . . . ."  The first full paragraph and new footnote No. 5 should read as follows:

"[D]angerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at

1

all.  If the court finds that resentencing a prisoner would pose an

unreasonable risk of danger, the court does not resentence the prisoner, and

the petitioner simply finishes out the term to which he or she was originally

sentenced."  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303, fn. omitted.)

"[A] court's discretionary decision to decline to modify the sentence in [a

prisoner's] favor can be based on any otherwise appropriate factor (i.e.,

dangerousness), and such factor need not be established by proof beyond a

reasonable doubt to a jury."  (*Ibid*.)  The prosecution bears the burden of

proving a prisoner's dangerousness by a preponderance of the evidence.

(*Id*. at p. 1305; *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-

1076.)[5]

---

[5]  In a petition for rehearing, defendant for the first time argues that we should reverse and remand for the trial court to reconsider his petition in light of Proposition 47, which "created a new resentencing provision, section 1170.18, under which '[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ("this act") had this act been in effect at the time of the offense may petition for a recall of sentence . . .' and request resentencing.  (§ 1170.18, subd. (a).)"  (*People v. Chaney* (2014) 231 Cal.App.4th 1391, 1395 (*Chaney*).)  Under that provision, an eligible defendant shall be resentenced to a misdemeanor "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.18, subd. (b).)  Proposition 47 also provides that, "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."  (§ 1170.18, subd. (c).)

Defendant contends the new definition of "unreasonable risk of danger to public safety" added by Proposition 47 applies to petitions for recall and resentencing filed pursuant to the Act, and that the trial court would not have found him to be dangerous and would have resentenced him had it applied that new definition.  Two courts have

*[footnote continued on next page]*

2

With the addition of new footnote No. 5, all subsequent footnotes should be renumbered accordingly.

This modification does not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

---

*[footnote continued from previous page]*
recently addressed similar arguments in published decisions, and have rejected it. (*Chaney*, *supra*, 231 Cal.App.4th at pp. 1396-1398 [holding that the definition of "unreasonable risk of danger to public safety" from Prop. 47 does not apply retroactively to petitions for recall and resentencing under the Act]; *People v. Valencia* (Dec. 16, 2014, F067946) ___ Cal.App.4th ___ [2014 Cal.App. Lexis 1149, *15-36] [holding that the "literal meaning [of section 1170.18, subdivision (c), as added by Proposition 47] does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures"].)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058383 |
| v. | (Super.Ct.No. PEF004508) |
| MARCUS WAYNE STEVENSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Becky Dugan, Judge. Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2000, defendant Marcus Wayne Stevenson was sentenced to two consecutive indeterminate terms of 25 years to life for his convictions on two counts of vehicle theft (Veh. Code, § 10851, subd. (a)), based on his admission that he suffered four prior serious and violent felony convictions within the meaning of the three strikes law.[1] Twelve years later, defendant petitioned the superior court for recall and resentencing under Proposition 36, known as The Three Strikes Reform Act of 2012 (hereafter the Act or the Reform Act). The trial court denied the petition because, although defendant is otherwise eligible for resentencing under the Act, it found that he "pose[s] an unreasonable risk of danger to public safety." (Pen. Code,[2] § 1170.126, subd. (f).) Finally, the trial court denied defendant's renewed petition, concluding it lacked authority under the Reform Act to resentence defendant on just one of his convictions.

In this appeal (case no. E058383), defendant contends the record does not support the trial court's finding that he is a danger to public safety. In the alternative, defendant contends the trial court had the authority to resentence him on at least one of his convictions, notwithstanding the finding of dangerousness. We conclude the trial court did not abuse its discretion by finding that defendant would pose an unreasonable risk of danger if he was resentenced, and that the finding of dangerousness renders defendant

_____

[1] We derive the procedural facts of defendant's underlying convictions and sentences from the record in defendant's prior appeal (*People v. Stevenson* (Apr. 4, 2002, E028990) [nonpub. opn.]), of which we take judicial notice. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[2] Unless otherwise indicated, all further undesignated statutory references are to the Penal Code.

ineligible for resentencing on either of his convictions. Therefore, we affirm the denial of defendant's petition.

I.

FACTS AND PROCEDURAL BACKGROUND

In an amended information, the People alleged that on May 18, 2000, defendant stole a Honda motorcycle (Veh. Code, § 10851, subd. (a), count 1), and that on May 9, 2000, he stole a Ford pickup truck (Veh. Code, § 10851, subd. (a), count 2). The People also alleged for purposes of sentencing that defendant suffered three prior prison terms (Pen. Code, § 667.5, subd. (b)), and that defendant suffered four prior convictions for serious and violent felonies (Pen. Code, §§ 667, subds. (c), (e), 1170.12, subd. (c)), to wit: (1) a June 7, 1989, conviction for first degree burglary (Pen. Code, § 459); (2) a June 7, 1989, conviction for robbery (Pen. Code, § 211); (3) a June 7, 1989, conviction for voluntary manslaughter (Pen. Code, § 192); and (4) an October 13, 1981, conviction for robbery with a firearm (Pen. Code, §§ 211, 12022.5).

At trial, defendant admitted all of the special allegations, and a jury found defendant guilty of both counts of vehicle theft. The trial court denied defendant's request to strike his strike priors for purposes of sentencing pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and it sentenced defendant under the three strikes law to an indeterminate term of 25 years to life on counts 1 and 2, to be

3

served consecutively.[3]  The trial court also sentenced defendant to three one-year enhancements for defendant's admitted prison priors, to be served consecutively to the sentence on counts 1 and 2 (§ 667.5, subd. (b)), for a total sentence of 53 years to life. This court affirmed the judgment.  (*People v. Stevenson*, *supra*, E028990.)

On November 21, 2012, defendant, in propria persona, filed a petition alleging he was eligible for recall and resentencing under the Act because his current convictions were "non-serious, non-violent."  The trial court appointed the county public defender to represent defendant, who then filed a brief also contending defendant was eligible for resentencing under the Act.  In support of the petition, appointed counsel filed reports of interviews with prison staff indicating that defendant had no serious infractions or problems while imprisoned and that he would likely be a productive member of society upon his release from prison.

In its opposition, the People argued that defendant was not entitled to resentencing because he posed a danger to public safety.  (Pen. Code, § 1170.126, subd. (f).)  Using parole suitability factors as a guide (see Cal. Code Regs., tit. 15, § 2281), the People argued defendant was unsuitable for resentencing because of his serious and violent criminal history, his unstable social history, his serious misconduct while in prison, his lack of remorse, and his inability to live within the law while out of custody.  The public defender filed a memorandum indicating that, contrary to the assertions made in the

---

[3]  As this court noted in its unpublished decision affirming defendant's convictions and sentence, the oral pronouncement of sentence incorrectly stated that the indeterminate term of 25 years to life for counts 1 and 2 were to be served concurrently. (*People v. Stevenson*, *supra*, E028990.)

opposition, defendant had no serious prison infractions.  Finally, the public defender filed probation reports from defendant's 1989 manslaughter case and from the underlying vehicle theft case, letters from defendant to former Judge Spitzer, who sentenced defendant in the underlying vehicle theft case, and a letter from defendant's brother-in-law to Judge Dugan, who heard defendant's petition.[4]

At the hearing on defendant's petition, Judge Dugan stated she read the papers and evidence submitted by the parties in support of and in opposition to the petition, and that she read this court's unpublished decision affirming the judgment.  Judge Dugan also noted that she had conducted two unreported conferences in chambers during which she reviewed records of defendant's behavior while in prison.  Moving to the merits of the petition, Judge Dugan concluded defendant was "technically eligible" for resentencing under the Reform Act, and stated that the sole issue to be decided was whether defendant was "suitable" for resentencing—"[t]hat is, if I release him, is he a danger to the community?"

---

[4]  "Ordinarily, the original sentencing judge will hear the petition and conduct resentencing unless that judge is unavailable.  (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1300–1301 . . . [(*Kaulick*)]; § 1170.126, subds. (b), (j).)"  (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1329.)  Former Judge Spitzer was not available to hear defendant's petition (see *Inquiry Concerning Spitzer* (2007) 49 Cal.4th CJP Supp. 254, review den. Mar. 19, 2008, S159603), so it was assigned to Judge Dugan instead (§ 1770.126, subd. (j)).

With respect to the People's allegations about defendant's behavior while in prison, counsel for defendant argued the People had misrepresented the record in its opposition and explained that the documented incidents did not show that defendant was dangerous. Judge Dugan agreed that defendant was "behaving adequately" while in prison. However, the judge stated to defendant, "The problem is you live your life in the state prison system, and every time you get out, you commit horrific crimes." Judge Dugan noted that defendant had previously pleaded guilty to voluntary manslaughter and was sentenced to 20 years in state prison for hitting a store clerk on the head with a baseball bat to steal $46, which resulted in the man's death "from the horrible injuries you inflicted on him." She also noted that "a very short time" after being released from prison, defendant committed his current vehicle theft crimes, one of which consisted of defendant taking advantage of someone who was trying to buy drugs. The judge characterized that act as "typical of [defendant's] behavior and how [he] us[es] people."

Addressing defendant's conviction for voluntary manslaughter, Judge Dugan noted that, notwithstanding his guilty plea, defendant later told a probation officer that he did not hit the man with a baseball bat, and he was not remorseful. In fact, Judge Dugan noted she had "never seen any document where [defendant] admitted remorse for that at all." For example, Judge Dugan read from a 2010 letter defendant wrote to former Judge Spitzer in which defendant asked to be resentenced. In the letter, defendant expressed remorse for committing the vehicle thefts, and acknowledged that former Judge Spitzer said at his sentencing hearing that the term of 25 years to life sentence was "for your past." However, Judge Dugan noted that defendant made no mention in the letter of his

voluntary manslaughter conviction. "[Y]ou knew that is why [former Judge Spitzer] sentenced you . . . to the 25 [years] to life. And you didn't even mention that. You didn't even say, 'I get it.'" Defendant addressed Judge Dugan, and told her, "I am remorseful and I try my best not to think about that time in my life because it was serious. It was a bad time in my life." He explained that he did not mention his voluntary manslaughter conviction when he wrote to former Judge Spitzer because "he knew about my past." Defendant said he did not like to talk about the attack on the store clerk because "it hurts."

Judge Dugan also asked defendant about an aunt who testified against him on the motorcycle theft count, and asked if he remembered that the aunt also testified that defendant called her 15 to 20 times before trial and asked her to perjure herself on the stand. Defendant denied that he asked his aunt to perjure herself, and explained that he was merely trying to ascertain whether she correctly identified him as the person she saw pushing the motorcycle in a field. With respect to his comments to the probation officer denying that he hit the store clerk with a baseball bat, even after pleading guilty to voluntary manslaughter, defendant explained, "I didn't want to admit that. I wasn't lying. I was lying to myself basically."

After further discussion, Judge Dugan denied the petition. She concluded defendant still lacked insight into his crime of voluntary manslaughter, and he continued to make excuses for committing his current crimes so soon after being released on parole. "I just cannot get over—I cannot shake the fact that you kill a man, serve the time for

7

that, and don't even take a breath when you get out again. Back on drugs, back doing crimes, back victimizing people." Defendant filed a notice of appeal that same day.

Less than a month later, appointed counsel for defendant appeared before Judge Dugan and requested recall and resentencing on one of defendant's vehicle theft convictions. According to counsel, defendant's two vehicle thefts occurred on separate occasions, and she argued that section 1170.126 gives the trial court the option to recall and resentence on just one count. Judge Dugan stated she did not believe she had jurisdiction under section 1170.126 to separate defendant's indeterminate life terms. "I think [section] 1170.126 simply says my job is to look at his petition to recall his sentence in its entirety . . . and determine whether he is safe to be released to the community or not at the time I hear the [petition]." Because she had already found that defendant would pose a danger to the community if he was resentenced, Judge Dugan denied the request. We granted defendant's motion to file a constructive notice of appeal from that order when his appointed counsel failed to do so.

II.

DISCUSSION

Defendant contends the record on appeal does not contain evidence that he poses a substantial risk of danger to public safety, so the trial court erred by concluding he is not eligible for resentencing under the Reform Act. In the alternative, defendant argues that, even if he is ineligible for resentencing on one of his convictions, he is eligible for resentencing on his other conviction. We conclude the trial court did not abuse its discretion by finding that defendant would pose an unreasonable risk of danger to the

8

public safety if he were resentenced, and that a finding of dangerousness renders defendant completely ineligible for recall and resentencing.

A.

The Trial Court Did Not Abuse Its Discretion When It Denied Defendant's Petition

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), which amended Penal Code sections 667 and 1170.12 and added section 1170.126. [Citation.]" (*People v. White* (2014) 223 Cal.App.4th 512, 517, fn. omitted.) "[T]here are two parts to the Act: the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony (Pen. Code, §§ 667, 1170.12); the second part is *retrospective*, providing *similar*, *but not identical*, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126)." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1292.)

"[U]nder the retrospective part of the Act, if the prisoner's third strike offense was not serious or violent, and none of the enumerated exceptions applies, the defendant 'shall be' sentenced as if the defendant had only a single prior strike, 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (Pen. Code, § 1170.126, subd. (f).*)*" (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1293, fn. omitted; see also § 1170.126, subd. (e).) "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶]

9

(2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (g).)

"[D]angerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all.  If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced."  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303, fn. omitted.) "[A] court's discretionary decision to decline to modify the sentence in [a prisoner's] favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury."  (*Ibid.*)  The prosecution bears the burden of proving a prisoner's dangerousness by a preponderance of the evidence.  (*Id.* at p. 1305; *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076.)

The parties agree that denial of defendant's petition is reviewed for abuse of discretion, and so do we.  Subdivisions (f) and (g) of section 1170.126 speak expressly of the trial court's discretion to deny a petition for resentencing, notwithstanding the prisoner's statutory eligibility, if it concludes that resentencing would pose an unreasonable risk of danger to the public.  "To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it 'falls

10

outside the bounds of reason.' [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.] An abuse of discretion will be 'established by "a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice . . . ."' [Citation.]" (*People v. Bryant*, *Smith and Wheeler* (2014) 60 Cal.4th 335, 390.)

Defendant contends the trial court's ruling was based on factual misunderstandings and an incomplete record, so the trial court could not have made an informed decision and, therefore, it abused its discretion. For instance, defendant contends Judge Dugan was wrong when she based her denial, in part, on defendant's failure to express remorse over his killing of the store clerk. He argues the matter should be remanded for Judge Dugan to consider the transcript from defendant's 2001 sentencing hearing (which Judge Dugan apparently did not consider) in which defendant expressed remorse.

True, at his sentencing hearing in February 2001, defendant told former Judge Spitzer, "I would never hurt anyone like back in the '80s. That was stupid, and it started as a beer run and it ended up as something else, and I regret that to this day. I swear I do. I pray." But, as Judge Dugan noted, just 16 days after pleading guilty to voluntary manslaughter, defendant "denied responsibility for this offense" during an interview with the probation department. During the hearing on his petition, defendant still did not unconditionally express remorse. Defendant told Judge Dugan that he was "remorseful" for what he did, but in the same sentence he said, "I try my best not to think about that time in my life because it was serious." And defendant explained that he did not mention

11

his manslaughter conviction in his 2010 letter to former Judge Spitzer because "it hurts," and because he "didn't want to admit it." He still showed a lack of insight by denying that he lied to the probation officer when he denied hitting the store clerk with the bat, telling Judge Dugan, "I wasn't lying. I was lying to myself basically." We are not convinced that Judge Dugan would have reached a different conclusion about defendant's lack of remorse had she considered the transcript of defendant's 2001 sentencing.

Defendant also contends the matter should be remanded to Judge Dugan to consider the sentencing transcript because it contradicts her conclusion that defendant attempted to suborn perjurious testimony from his aunt. At defendant's sentencing, the prosecutor stated he was "trouble[d] that the defendant tried to get off by getting his aunt to commit perjury." Defendant denied that he tried to suborn his aunt's perjury, and former Judge Spitzer expressed his belief that defendant's pretrial phone calls to his aunt did not amount to attempted subornation of perjury. Even if Judge Dugan had the sentencing transcript in front of her, the result would not likely have been different. True, when explaining why she was about to deny the petition, Judge Dugan mentioned that defendant "wanted [his] aunt to lie." But that was only one of the reasons Judge Dugan provided for her ruling. Judge Dugan's ruling was also based on defendant's lack of insight into his crime of voluntary manslaughter, defendant's continued pattern of making excuses for that crime and for his current crimes, and the fact that defendant committed additional crimes so soon after his release from prison and he was likely to commit crimes after release if he were to be resentenced.

12

The record contains ample evidence that defendant lacked insight into his crimes and failed to take advantage of programming in prison to achieve such insight. He was unable to articulate any insight into why he had committed the vehicle thefts so soon after his parole other than to rely on the excuses that he lost his job and was in a bad environment. His proposed solution was to be released into another community or state. Therefore, we conclude the trial court did not abuse its discretion by denying defendant's petition.[5]

B.

<u>Defendant's Dangerousness Renders Him Entirely Ineligible for Resentencing</u>

Defendant also argues that, even if the trial court's finding of dangerousness meant he could not be resentenced on both of his convictions for which he is serving indeterminate life sentences, he was nonetheless eligible for resentencing on at least one of them. We disagree and conclude that a finding of dangerousness permeates all of a

---

[5] That Judge Dugan focused on whether defendant would be dangerous to the community if immediately released, as opposed to whether he would pose a danger to the community if he was resentenced, as required by section 1170.126, subdivision (f), is of no moment.

prisoner's current convictions and renders him entirely ineligible for recall and resentencing under the Reform Act.[6]

"'In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction.'" (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1034.) "'In construing statutes, "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]"'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.) If the language of a voter initiative is unclear or ambiguous on its face, "we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved. [Citations.]" (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.) Resort to external sources of legislative or voter intent is also permissible to confirm an interpretation of the plain language of a statute. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 279.)

---

[6] We are aware of no published decision that has addressed this issue. A similar split resentencing issue is pending in the California Supreme Court: "Is an inmate serving an indeterminate term of life imprisonment under the Three Strikes Law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12), which was imposed for a conviction of an offense that is not a serious or violent felony, eligible for resentencing on that conviction under the Three Strikes Reform Act if the inmate is also serving an indeterminate term of life imprisonment under the Three Strikes Law for a conviction of an offense that is a serious or violent felony?" (*Braziel v. Superior Court*, review granted July 30, 2014, S218503; *People v. Machado*, review granted July 30, 2014, S219819.)

14

The Reform Act clearly provides that the trial court shall recall and resentence an eligible defendant, "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)  The trial court did not limit its finding of dangerousness to only one of defendant's current convictions, and a finding that defendant currently poses a risk to public safety must logically apply to all of his convictions and render him ineligible for resentencing under section 1170.126, subdivision (f).  Put another way, if defendant is currently dangerous, then he is dangerous in a broader sense, and that dangerousness is not limited to just one of his convictions.  The plain language of the Reform Act simply cannot be interpreted to mean the trial court may recall and resentence a prisoner on one conviction notwithstanding a finding of dangerousness.[7]  We therefore wholeheartedly agree with the People that "the plainly all-or-nothing factual determination of whether [defendant] 'poses an unreasonable risk of danger to public safety'—i.e., whether or not [defendant] is dangerous—is inherently incompatible with the count-by-count resentencing [defendant] requests here.  It would make little sense to parse [defendant's] convictions so as to find that he poses 'an unreasonable risk of danger to public safety' as to one count but not to the other."

---

[7]  Because the Reform Act is not susceptible to """"two reasonable interpretations [that] stand in relative equipoise,"""" (*People v. Manzo* (2012) 53 Cal.4th 880, 889) we disagree with defendant that the rule of lenity requires us to interpret section 1170.126 to provide for recall and resentencing on just one conviction.

Further evidence in support of our conclusion is found in the official ballot pamphlet for Proposition 36, prepared by the Secretary of State.[8]  In their arguments in favor of Proposition 36, the supporters argued, "Precious financial and law enforcement resources should not be improperly diverted to impose life sentences for some non-violent offenses.  Prop. 36 will assure that violent repeat offenders are punished and not released early." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52.)[9]  They argued that reform of the three strikes law would save taxpayers money, while at the same time the law "will continue to punish dangerous career criminals who commit serious violent crimes—*keeping them off the streets for 25 years to life*." (*Ibid*., italics added.)  Under the heading "Make Room in Prison for Dangerous Felons," the supporters argued, "Prop. 36 will help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets." (*Ibid*.; see also *People v. Yearwood* (2013) 213 Cal.App.4th 161, 171 (*Yearwood*).)  The proponents asserted, "Prosecutors, judges and police officers support[ed] Prop. 36 because Prop. 36 helps ensure that prisons can keep dangerous criminals behind bars for life.  *Prop. 36 will keep dangerous criminals off the streets.*" (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52, italics added.)  Finally, the supporters argued, "Criminal justice experts and law enforcement

___

**8**  We grant the People's request that we take judicial notice of the official ballot pamphlet.  (Evid. Code, §§ 452, subd. (c), 459, subd. (a); *St. John's Well Child & Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 967, fn. 5.)

**9**  Available at <http://vig.cdn.sos.ca.gov/2012/general/pdf/36-arg-rebuttals.pdf > (as of Dec. 11, 2014).

16

leaders carefully crafted Prop. 36 *so that truly dangerous criminals will receive no benefits whatsoever from the reform.*" (*Ibid.*, italics added; see also *Yearwood*, at p. 171.)

In their arguments against adoption of Proposition 36, the opponents argued the initiative was another attempt by "opponents of tough criminal laws" to reform the three strikes law, and that Proposition 36 would "allow[] dangerous criminals to get their prison sentence REDUCED and then RELEASED FROM PRISON!" (Voter Information Guide, Gen. Elec., *supra*, argument against Prop. 36, p. 53.) In rebuttal, supporters of Proposition 36 argued, "Today, dangerous criminals are being released early from prison because jails are overcrowded with nonviolent offenders who pose no risk to the public. *Prop. 36 prevents dangerous criminals from being released early.* People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, italics added; see also *Yearwood*, *supra*, 213 Cal.App.4th at p. 171.)

None of the aims expressed by the proponents of Proposition 36 is consistent with permitting a prisoner, who is found to pose a substantial risk of danger to the public, to be resentenced on either of his current convictions for which he was sentenced to an indeterminate term of life. To the contrary, the ballet pamphlet clearly states that the proponents of Proposition 36 intended that dangerous criminals serving indeterminate life terms would not benefit from its passage.

17

Defendant nonetheless contends the Reform Act contemplates recall and resentencing on just one of a prisoner's current convictions, and he cites subdivisions (h) and (i) of section 1170.126 as evidence that the voters intended such a result. Subdivision (h) provides that, if the superior court grants the petition, at the prisoner's resentencing it may not "impo[se] a term longer than the original sentence." (§ 1170.126, subd. (h); see *Kaulick*, *supra*, 215 Cal.App.4th at p. 1303 ["The maximum sentence to which [the defendant], and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced"].) And subdivision (i) provides that a prisoner may waive his personal presence at the hearing on his petition and, if the petition is granted, he may waive his presence at resentencing so long as the accusatory pleading is not amended and the trial court does not conduct a new trial or retrial on the underlying counts in his absence. (§ 1170.126, subd. (i); *Kaulick*, at pp. 1299-1300.) Neither subdivision in any way addresses whether the trial court may grant a petition to recall and resentence a prisoner on just one of his convictions, notwithstanding a finding under subdivision (f) of section 1170.126 that the prisoner is dangerous.

Finally, subdivision (k) of section 1170.126 does not support defendant's argument either. That subdivision provides: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (§ 1170.126, subd. (k).) According to defendant, this means a trial court may recall and resentence a prisoner on one of his convictions because, under existing authority, it has the authority to strike just one prior conviction under *Romero* while leaving others intact

18

for purposes of sentencing. (See *People v. Garcia* (1999) 20 Cal.4th 490, 500 (*Garcia*); *People v. Carrillo* (2001) 87 Cal.App.4th 1416, 1419, fn. 3.) We are not persuaded. "Section 1170.126(k) protects prisoners from being forced to choose between filing a petition for a recall of sentence and pursuing *other legal remedies to which they might be entitled* (e.g., petition for habeas corpus)." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 178, italics added.) We need not decide whether relief under *Romero* is still available to defendant, but we decline to engraft onto section 1170.126 the trial court's distinct discretion under section 1385 and *Romero*.

In sum, we conclude the trial court correctly declined to separate defendant's convictions and resentence defendant on just one of them.

III.

DISPOSITION

The postjudgment orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

19