Filed 8/4/21

CERTIFIED <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION et al., | C085176, C085381 |
| Petitioners, | |
| v. | |
| SHIRLEY N. WEBER, as Secretary of State, etc., | |
| Respondent; | |
| JOSH NEWMAN, as State Senator, etc., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Petitions denied.

Bell, McAndrews & Hiltachk, Thomas W. Hiltachk, Ashlee N. Titus and Terry J. Martin for Petitioners.

Xavier Becerra, Rob Bonta, Attorneys General, Thomas S. Patterson, Senior Assistant Attorney General, and John W. Killeen, Deputy Attorney General, for Respondent.

Olson, Hagel & Fishburn, Lance H. Olson, Deborah B. Caplan and Richard C. Miadich for Real Party in Interest Josh Newman.

Diane F. Boyer-Vine, Legislative Counsel, Robert A. Pratt, Principal Deputy Legislative Counsel, Josh Tosney, Deputy Legislative Counsel; Strumwasser & Woocher, Fredric D. Woocher, Michael J. Strumwasser and Gregory G. Luke for Real Party in Interest Legislature of the State of California.

Petitioners Howard Jarvis Taxpayers Association, David John Shawver, Brooke M. Paz, Ryan Hoskins, and Amanda McGuire brought two petitions for writ of mandate challenging the constitutionality of legislative amendments made to the procedures governing the recall of state officers.  Petitioners began a recall proceeding in April 2017 with the aim of obtaining certification in August 2017 for the November 2017 election. The Legislature changed the law in June 2017 by passing Senate Bill No. 96 (2017-2018 Reg. Sess.).  Petitioners filed a writ petition in case No. C085176, challenging the constitutionality of Senate Bill No. 96 on single-subject grounds.  We issued an order temporarily staying the enforcement of the amendments to the Elections Code effected by Senate Bill No. 96.

On August 24, 2017, the Legislature enacted similar revisions to the recall procedures by adopting Senate Bill No. 117 (2017-2018 Reg. Sess.), a bill providing for appropriations related to the budget bill.  Petitioners filed a writ petition in case No. C085381, challenging the retroactive application of Senate Bill No. 117's Elections Code amendments, arguing the amendments impaired their right to a speedy recall, denied them due process, and were not a valid budget-related bill that could be passed by a majority vote and take effect immediately.  We consolidated both cases and issued an order directing the parties to address the following query:  "Does the Legislature of the State of California have the authority to (1) amend the budget bill by a majority vote, and (2) adopt 'other bills providing for appropriations related to the budget bill' to become

2

effective immediately by a majority vote." The parties have complied. We shall deny both petitions.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### The Right to Recall

The ability of citizens to recall a state official is governed by article II, sections 13 through 20 of the California Constitution. Section 14 provides that a recall of a state official is "initiated by delivering to the Secretary of State a petition alleging reasons for recall" and "[p]roponents have 160 days to file signed petitions." (Cal. Const., art. II, § 14, subd. (a).) Section 15 states an election to determine the recall shall be held not less than 60 nor more than 80 days from certification but may be held within 180 days from certification in order to allow for consolidation with the next regularly scheduled election. (Cal. Const., art. II, § 15, subds. (a), (b).) Section 16 states that the Legislature shall provide for circulation, filing, and certification of petitions, nomination of candidates, and the recall election. (Cal. Const., art. II, § 16.) The Legislature enacted Elections Code section 11000 et seq., governing state and local recall elections. These provisions set forth the procedures leading to certification of the recall and impose conditions for the calling of a recall election within the time frames prescribed by the Constitution.

### The Recall in Question

In April 2017, Senator Josh Newman voted to approve Senate Bill No. 1 (2017-2018 Reg. Sess.), a bill increasing taxes on cars and gasoline. Immediately afterward,

---

[1] The parties filed several requests for judicial notice, which we deferred pending calendaring and assignment of the panel. We now grant the request filed by real party in interest Legislature of the State of California on October 2, 2017, the request filed by real party in interest Senator Josh Newman on October 4, 2017, the request filed by respondent Secretary of State on October 4, 2017, and the request filed by petitioners on October 17, 2017.

petitioners began a recall against Senator Newman, filing a notice of intention and proof of service with the state. On April 20, 2017, they published a notice of intention. All of these steps complied with requirements under the Elections Code. (Elec. Code, §§ 11006, 11021, 11022.) Subsequently, the state approved the recall petition format on May 8, 2017, allowing petitioners to begin circulating the petition. (Elec. Code, § 11042.)

**Proposition 25**

In the November 4, 2010 general election, voters approved Proposition 25, known as the "On-Time Budget Act of 2010," which amended article IV, section 12 of the California Constitution to provide that the Legislature may pass both "the budget bill" and "other bills providing for appropriations related to the budget bill" by a simple majority vote, to take effect immediately after being signed by the Governor. (Cal. Const., art. IV, § 12, subd. (e)(1).) Proposition 25 defined " 'other bills providing for appropriations related to the budget bill' " to "consist only of bills identified as related to the budget in the budget bill passed by the Legislature." (Cal. Const., art. IV, § 12, subd. (e)(2).)

**Senate Bill No. 96**

On June 15, 2017, the Legislature enacted Senate Bill No. 96 (2017-2018 Reg. Sess.). Senate Bill No. 96 amended the recall procedures in the Elections Code. Senate Bill No. 96 created a new 30-day period after the initial determination that a sufficient number of signatures had been filed during which signers could request withdrawal of their signatures from the recall petition. It also required a full count of petition signatures rather than a random sample but did not change the total amount of time available for the full count. In addition, Senate Bill No. 96 required the Department of Finance to work with local elections officials to determine the cost of the election and to provide that information to various state officials, and required that information be included in the

official ballot materials. Senate Bill No. 96 also appropriated funding to offset the local cost of state recall elections. (Stats. 2017, ch. 28, §§ 2-6.) The Legislature made the new procedures applicable to pending recalls, which included the recall of Senator Newman. (Stats. 2017, ch. 28, § 1.)

Petitioners filed a petition for writ of mandate in case No. C085176 seeking an immediate stay to prevent the Secretary of State from enforcing the provisions of Senate Bill No. 96 as it related to the proposed recall of Senator Newman. Petitioners argued Senate Bill No. 96 retroactively impaired their vested rights to a speedy election and violated the constitutional provisions limiting legislation to a single subject.

On August 14, 2017, we issued an order granting an alternative writ and stay directing the Secretary of State not to enforce the provisions of Senate Bill No. 96. We cited article IV, section 9 of the state Constitution, the legislative single-subject requirement.

**Senate Bill No. 113 and Senate Bill No. 117**

On August 24, 2017, the Legislature enacted and the Governor signed a followup budget bill that amended the June 2017 budget act and designated certain bills as bills related to the budget bill that would be effective immediately pursuant to article IV, section 12 of the state Constitution. (Sen. Bill No. 113 (2017-2018 Reg. Sess.).) One of the appropriations in Senate Bill No. 113 was an appropriation to offset the recall costs and one of the budget-related bills was Senate Bill No. 117 (2017-2018 Reg. Sess.).

Section 27 of Senate Bill No. 113 appropriates $5 million for recall elections and section 39 "finds and declares" that numerous bills, including Senate Bill No. 117, "are other bills providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution." (Stats. 2017, ch. 181, § 39.)

5

The Legislature enacted Senate Bill No. 117 and the Governor signed the bill the same day.  Senate Bill No. 117 was intended to remedy any potential single-subject violations present in Senate Bill No. 96.  (Stats. 2017, ch. 180, § 1.)  Senate Bill No. 117 repealed the provisions of Senate Bill No. 96 and enacted similar provisions with several changes.  Senate Bill No. 117 limited the Department of Finance to 30 business days to produce its cost report.  (Stats. 2017, ch. 180, § 11.)  The bill included a statement that: "It is the Legislature's intent that the changes made to the Elections Code . . . apply retroactively to recalls that are pending at any stage at the time of the act's enactment." (Stats. 2017, ch. 180, § 2.)

Section 17 of Senate Bill No. 117 states that it is "a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately."  (Stats. 2017, ch. 180, § 17.)  Both Senate Bill Nos. 113 and 117 were adopted by majority vote.  (Sen. Bill No. 113, Bill Final Hist. (2017-2018 Reg. Sess.) <https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201720180SB113> [as of July 16, 2021], archived at <https://perma.cc/Y98G-HW4X>; Sen. Bill No. 117, Bill Final Hist. (2017-2018 Reg. Sess.) <https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201720180SB117> [as of July 16, 2021], archived at < https://perma.cc/CL4T-JQZD>.)

Petitioners filed a new petition for writ of mandate, case No. C085381, arguing that Senate Bill No. 117 retroactively impaired their vested rights and should not become effective immediately.  On September 1, 2017, we issued an alternative writ but denied the request for an immediate stay.  On September 6, 2017, we consolidated both cases and ordered a written return by October 2, 2017.  We requested that the parties address the following question:  "Does the Legislature of the State of California have authority to (1) amend the budget bill by a majority vote, and (2) adopt 'other bills providing for

6

appropriations related to the budget bill' to become effective immediately by a majority vote." The parties complied. We shall deny both petitions for writ of mandate.

## DISCUSSION

### *Standard of Review*

Petitioners challenge Senate Bill No. 117 both on its face and as applied. A facial challenge considers the text of the statute, not its application. To prevail on a facial challenge, a plaintiff must demonstrate the statute is unconstitutional in the vast majority of cases. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218.) We are not oblivious to the political realities of the legislative process. But there is no scienter element in the standards by which we judge the propriety of legislative conduct. We do not concern ourselves with legislative motives but with legislative effects. An as applied challenge argues the enforcement of a statute against an individual or the manner in which the provision is applied is unconstitutional. To prevail on an as applied challenge, a plaintiff must demonstrate that the application of the statute deprived the individual of a protected right. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 56 (*Allen*).)

In either case, we presume that the challenged statute is constitutional and uphold it unless its unconstitutionality " ' "clearly, positively and unmistakably appears." ' " (*Allen, supra*, 234 Cal.App.4th at p. 56.) We do not look to the Constitution to determine whether the Legislature is authorized to do an act, but instead consider only whether it is prohibited. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 254.)

### *Due Process*

Petitioners renew their argument, made in their previous petitions, that their constitutional right to a recall "necessarily includes the right to a speedy and immediate recall election where petitioners have completed all of the statutory requirements for such a recall election to occur." According to petitioners, Senate Bill No. 117 violates the

7

California Constitution by adding procedural steps to the election process that interfere with this vested right, which violates their right to due process.

However, petitioners fail to cite any language in the California Constitution to support this assertion of a right to a speedy and immediate recall election. Instead, the Constitution only guarantees petitioners the right to have a recall election held within a specified number of days following certification that the recall petition bears sufficient signatures. Article II of the California Constitution sets forth certain requirements regarding the percentages of signatures required for a recall, a period of 160 days for circulation, and two alternatives for an election, depending on the proximity of the next regularly scheduled election. (Cal. Const., art. II, §§14, 15.) In addition, section 16 of article II gives the Legislature express authority to craft additional requirements including "circulation, filing, and certification of petitions, nomination of candidates, and the recall election." (Cal. Const., art II, § 16.)

In considering constitutional challenges to election laws, we follow the analysis of the Supreme Court in *Anderson v. Celebrezze* (1983) 460 U.S. 780 [75 L.Ed.2d 547] and *Burdick v. Takushi* (1992) 504 U.S. 428 [119 L.Ed.2d 245]. (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 174; *Rubin v. Padilla* (2015) 233 Cal.App.4th 1128, 1139, fn. 5.) Under this standard, the rigorousness of our inquiry depends upon the extent to which a challenged statute burdens First and Fourteenth Amendment rights. We weigh the magnitude of the burden imposed against the interest which the state argues justify the burden and consider whether these concerns justify the burden. Regulations imposing severe burdens must be narrowly tailored to advance a compelling state interest. Lesser burdens require a less stringent review, and the state's regulatory interests will usually justify reasonable restrictions. (*Edelstein, supra*, at p. 174; *Field v. Bowen* (2011) 199 Cal.App.4th 346, 356 (*Field*).)

Since petitioners cannot point to any constitutional right to an immediate or speedy recall, they must demonstrate Senate Bill No. 117 imposes an unconstitutional

8

burden on their right to a recall election. We find any burden resulting from implementation of Senate Bill No. 117 minor and justified by the state's regulatory interests.

The United States Constitution grants states broad powers to dictate the time, place, and manner of holding elections for senators and representatives; a power matched by a state's control over the election procedures for state offices. Deadlines and time limits for signature gathering, signature verification, voter withdrawal of signatures, and the standards for conveying information to voters are examples of reasonable, nondiscriminatory restrictions. (*Field, supra*, 199 Cal.App.4th at p. 356.)

Senate Bill No. 117 adds minimal time periods for aspects of a recall election. It provides for 30 business days for voters to withdraw their signatures from a recall petition, the Department of Finance to prepare a fiscal estimate of the cost of the recall election, and the Joint Legislative Budget Committee to review and comment on the estimate. These steps must be completed before the Secretary of State can certify the signatures to the Governor. (Stats. 2017, ch 180, § 11.) Senate Bill No. 117 adds 90 business days plus the transition period between each step to the recall process.

The state's interest in election integrity and informing voters is sufficient to justify these modest restrictions. (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 542.) In proposing Senate Bill No.117, the Legislature stated "[r]ecall elections are extraordinary elections in which an official may be removed by fewer votes than the number of voters who elected that official." (Stats. 2017, ch. 180, § 2, subd. (a).) Therefore, "any and all steps should be employed to ensure the accuracy and validity of the petition process." (Stats. 2017, ch. 180, § 2, subd. (b).) Senate Bill No. 117 requires local election officials to verify signatures by comparing each one to the record of registration instead of randomly verifying only a small sample. (Stats. 2017, ch. 180, § 6.) Individual verification of signatures serves the state's compelling interest in protecting the integrity of the election process. (*Wilcox v. Enstad* (1981) 122 Cal.App.3d 641, 654.)

9

As noted, Senate Bill No. 117 created a new 30-business-day period in which voters can withdraw their signatures from a recall petition. Existing law permitted a signer of a recall petition, initiative petition, or referendum petition to withdraw their signature from a petition by filing a withdrawal request prior to, but not after, the day the petition is filed. (Elec. Code, § 103.) Proponents of recall petitions could turn in their signature sheets on a rolling basis in sections. (Elec. Code, §§ 11102, 11103, 11303.) This limited the voter's ability to withdraw their signature depending on when the signature sheet was filed.

Under Senate Bill No. 117, the withdrawal period begins when the Secretary of State notifies county election officials that a sufficient number of signatures has been gathered. Written requests by voters to withdraw their signatures from a recall petition must be filed within 30 business days. (Stats. 2017, ch. 180, § 11.) Local elections officials then must report the number of withdrawals to the Secretary of State. (*Ibid*.) Permitting voters to withdraw their signatures from a recall petition serves the state's interest of protecting voter autonomy and providing a uniform time period for withdrawing signatures.

Finally, the Legislature, in enacting Senate Bill No. 117, mandated voters be informed of the costs of a recall election. Senate Bill No. 117 requires that a fiscal estimate of the cost of the recall election be provided to voters in the voter information guide and posted on the Secretary of State's website. (Stats. 2017, ch. 180, § 13.) The estimate must be prepared by the Department of Finance within 30 business days of the Secretary of State notifying it that a sufficient number of verified signatures has been gathered. The Joint Legislative Budget Committee has 30 business days to review and comment on the fiscal estimate. (Stats. 2017, ch. 180, § 11.) The state has a compelling interest in informing the electorate. (*Griset v. Fair Political Practices Com.* (1994) 8 Cal.4th 851, 862.) Providing voters with an estimate of the costs of a recall election serves this compelling state interest.

Petitioners also argue Senate Bill Nos. 96 and 117 retroactively impaired their vested rights. In support, they cite *Hudler v. Austin* (E.D.Mich. 1976) 419 F.Supp. 1002, affd. *sub nom. Allen v. Austin* (1977) 430 U.S. 924 [51 L.Ed.2d 769]. In *Hudler*, the district court upheld a Michigan election law that imposed new signature gathering requirements for the qualification of new parties to the ballot. However, the court found the statute violated the due process rights of the plaintiffs by requiring them to restart their petition gathering right before an impending election. The court reasoned: "The short time limits, extra expense and duplicative effort required to regenerate the support of plaintiffs' constituencies . . . imposes an unnecessarily prejudicial burden on the plaintiff new parties" and they face "an obligation substantially more difficult to satisfy than that which new parties will face in the future . . . ." (*Hudler, supra*, at p. 1014.)

Here, however, Senate Bill Nos. 96 and 117 do not impose such substantial burdens on petitioners. The newly enacted requirements fall on local election officials after signatures are collected, not those seeking a recall election. No party is being deprived of the right to a recall election. Instead, Senate Bill Nos. 96 and 117 add a period for signature withdrawal and require a financial report to be prepared. Such measures may briefly delay a recall election but they do not deprive any party of the right or ability to participate in such an election.

### Collateral Estoppel

Petitioners argue the issues before us are identical to, and have been resolved by, our nonpublished opinion in *Howard Jarvis Taxpayers Assn. v. Bowen*. (*Howard Jarvis Taxpayers Assn. v. Bowen* (Jan. 18, 2013, No. C071506) opn. ordered nonpub. May 22, 2013, S209368 (*Bowen*).) According to petitioners, collateral estoppel applies because our prior decision involved the same parties and resolved "the exact same issue." We disagree.

11

Under collateral estoppel, the issue a party seeks to have precluded must be identical to the issue decided in a prior proceeding, have been actually litigated, and necessarily decided in the prior proceeding. The party asserting collateral estoppel bears the burden of establishing these requirements. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

In *Bowen*, the June budget bill (Assem. Bill No. 1464 (2011-2012 Reg. Sess.)) identified several bills as " 'other bills providing for appropriations related to the budget bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution.' " (*Bowen, supra*, C071506 [at p. 4].) A number of these bills were called "spot bills," bills that contained no substantive content. After the adoption of the June budget bill, the Legislature amended one of the spot bills to provide content related to the order of ballot measures for an upcoming election. The Legislature adopted the amended bill by majority vote, relying on its characterization of the bill as providing for appropriations in the budget bill within the meaning of subdivision (e) of section 12 of article IV of the state Constitution. We held that "section 12 does not allow the Legislature to name empty spot bills in the budget bill and only after the budget bill is passed to fill those placeholders with content as urgency legislation." (*Bowen, supra*, C071506 [at p. 13].) We concluded that a spot bill referenced in the budget bill is neither identified nor a bill. (*Ibid.*)

Senate Bill No. 117 is not a spot bill. The Legislature enacted a new budget bill, Senate Bill No. 113, which amended the budget act of 2017. Among the changes were additional appropriations for recall elections and a new list of bills designated by the Legislature as "related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution." (Stats. 2017, ch. 181, § 39.) Senate Bill No. 117 was one of these bills. In contrast to an empty spot bill, Senate Bill No. 117 contained two sets of Elections Code amendments, including the amendments to the recall provisions. The Legislature did not amend a spot bill identified in the June budget

12

bill; instead it adopted an amended budget bill with an amended set of related bills, including Senate Bill No. 117.  *Bowen* has no collateral estoppel effect on the present case.

### *Proposition 25*

Our first query to the parties asked if the Legislature has the authority to amend the budget bill by majority vote.  Petitioners respond that a general fund appropriations bill, other than the budget bill, requires a two-thirds vote of both houses.  They further argue such a bill is void if not passed with a two-thirds vote.  In effect, petitioners argue only the budget bill can be passed by majority vote; all other budget-related bills must be passed by a two-thirds vote.

We disagree with such a cramped, restrictive reading of Proposition 25. Petitioners argue that, because section 12 uses the definite article "the" in the phrase "the budget bill," Proposition 25 only applies to "the budget bill" not amendments to the budget bill.  (Cal. Const., art. IV, § 12, subd. (d).)

However, section 12's use of the term "the budget bill" must be considered in context, harmonizing it with related provisions to give effect to the entire process of budget legislation.  The reference to "the budget bill" in the first sentence of section 12, subdivision (d) has been construed to include not only the initial budget bill required to be adopted by June 15, but also later enacted budget bills.

Budget bill amendments serve numerous purposes.  The Legislature has amended the budget bill to clarify technical errors or clarify provisions.  In *St. John's Well Child & Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960 (*St. John's*), the state's economy deteriorated after the Governor signed the budget act for the upcoming fiscal year.  The Legislature assembled a special session to address the crisis and enacted a budget package containing billions of dollars in revisions to the budget act.  (*Id.* at pp. 967-968.) The Governor vetoed some of the line items in the budget and the plaintiffs filed suit.

13

The plaintiffs argued that the Governor had the authority to veto items in the budget act, but the later revisions were not " 'appropriations' " that he could veto. (*Id.* at pp. 973, 977.)

The California Supreme Court held that, after the Legislature made midyear reductions to appropriations that originally appeared in the 2009 budget act, the Governor had the authority to exercise his line-item veto as to the later revisions. (*St. John's, supra*, 50 Cal.4th at p. 970.) The Supreme Court rejected the plaintiffs' effort to distinguish the initial budget act from the subsequent amendments. According to the court, "There is no substantive difference between a Governor's reduction of an item of appropriation in the original 2009 Budget Act . . . and a Governor's reduction of that same item in a subsequent amendment to the 2009 Budget Act." (*Id.* at p. 978.) Subsequently, both the original budget act and the later reductions were characterized by the court as an "extensive and multi-itemed budget bill." (*Id.* at p. 980.)

Petitioners distinguish *St. John's* as predating the enactment of Proposition 25. They also contend "the only conclusion in *St. John's* applicable to this case is that a subsequent bill amending the budget is an 'appropriation bill.' All General Fund appropriation bills, except for public schools and the Budget Bill are void unless passed by the general two-thirds vote requirement found in section 12(d)." We disagree.

The *St. John's* court, by upholding the inclusion of multiple appropriations in the subsequent bill and explicitly identifying the bill as an "amendment" to the budget act, concluded that the budget bill in section 12 did not refer to only the original budget bill, but also encompassed subsequently enacted bills. Here, Senate Bill No. 113 amended the initial budget act.

Prior to the passage of Proposition 25 in 2010, budget bills and budget-related legislation had to be passed by a two-thirds majority. (Cal. Const., art. IV, former § 12.) The requirement resulted in budgetary gridlock and voters passed Proposition 25 allowing the Legislature to enact a budget and budget-related bills by a simple majority.

14

Proposition 25 adopted article IV, section 12, subdivision (e)(1), which exempts from the two-thirds requirement "the budget bill and other bills providing for appropriations related to the budget bill . . . ." Other bills must be "identified as related to the budget in the budget bill passed by the Legislature." (Cal. Const., art. IV, § 12, subd. (e)(2).)

In *City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020 (*Cerritos*), we considered this language in Proposition 25. We concluded the phrase "other bills providing for appropriations related to the budget bill" include trailer bills, if those trailer bills contain appropriations and are identified as being related to the budget in the budget bill. (*Cerritos, supra*, at pp. 1053-1054, 1056.) We noted the materials accompanying Proposition 25 informed voters that "the lower vote requirement also would apply to 'trailer bills that appropriate funds and are identified by the Legislature "as related to the budget in the budget bill." ' " (*Cerritos, supra*, at p. 1056.) This interpretation also applies to trailer bills containing substantive revisions to existing law. (*Id.* at pp. 1051-1052, 1056.)

Here, Senate Bill No. 117 contained an appropriation of $350,000. (Stats. 2017, ch. 180, § 15.) Senate Bill No. 113, part of the budget bill, specifically identified Senate Bill No. 117 as a trailer bill providing for appropriations related to the budget bill. (Stats. 2017, ch. 181, § 39.) Senate Bill No. 117 therefore "contains an appropriation and is identified as being related to the budget in the Budget Bill. Under the plain language added by Proposition 25, then [it] qualifies as an 'other bill[ ] providing for appropriations related to the budget bill' within the meaning of article IV, section 12[, subdivision] (e)." (*Cerritos, supra*, 239 Cal.App.4th at pp. 1053-1054.) Therefore, regarding our second question, we conclude other bills providing for appropriations related to the budget bill become effective immediately by a majority vote.

15

## DISPOSITION

The petition for writ of mandate in case No. C085176 is denied and the stay issued by this court on August 14, 2017, is vacated upon finality of this opinion. The petition for writ of mandate in case No. C085381 is denied. The parties shall bear their own costs in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

                                      /s/
                              RAYE, P. J.

We concur:

     /s/
ROBIE, J.

     /s/
MAURO, J.

16